# Taylor *versus* Commonwealth.

1. The Register of Wills, although ex officio clerk of the Orphans' Court since the Constitution of 1874, has yet independent judicial acts to perform, in which he is not subject to the control of the Orphans' Court, except by way of appeal.

2. The kinship of parties filing a caveat against the admission of a will to probate, if disputed, must first be determined, as otherwise the caveators are mere volunteers, and have no right to object to the probate.

3. Where a caveat is filed against the admission of a will to probate by certain parties alleging themselves to be the next of kin of testator, and the evidence is conflicting as to whether or not they are such next of

[Taylor v. Commonwealth.]

kin, it is the duty of the Register of Wills to certify such question of disputed kinship to the Orphans' Court, and upon his refusal to do so the Common Pleas have power by mandamus to compel such action, notwithstanding the fact that the Orphans' Court had previously refused to grant a rule on the Register to certify said question to them, which rule had improvidently been asked for in that court.

March 21st 1883. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON and CLARK, JJ., absent.

ERROR to the Court of Common Pleas No. 2 of *Philadelphia county:* Of January Term 1883, No. 194.

This was, in the court below, a proceeding by petition and answer, wherein the said court awarded a writ of peremptory mandamus, directed to the Register of Wills of Philadelphia county, commanding him to certify to the Orphans' Court a certain difficult and disputable question of kindred, to wit, whether the caveators in the matter of the alleged will of Peter Cullen, deceased, are of kin to said Peter Cullen, deceased, and restraining him from issuing a precept to the Common Pleas for an issue devisavit vel non, until the determination of the said question of kinship.

The facts and proceedings in the case are fully recited in the said writ of mandamus, which was as follows:

IN THE COURT OF COMMON PLEAS No. 2, IN AND FOR THE CITY AND COUNTY OF PHILADELPHIA.

IN THE MATTER OF THE LAST WILL OF } March Term 1882.
PETER CULLEN, DECEASED. } No. 323.

*Philadelphia county, ss:*

The Commonwealth of Pennsylvania to William M. Taylor, Esq., Register of Wills, Greeting:

Whereas, the petition of Charles W. Sparhawk, executor of the will of Peter Cullen, deceased, has caused us to understand and be informed that Peter Cullen died September 5th 1881, leaving a last will and testament, wherein he, the said Charles W. Sharhawk was appointed executor: that upon September 9, 1881, he, the said Charles W. Sparhawk, offered the said will for probate before William M. Taylor, Esq., Register of Wills of Philadelphia County; that a caveat having been filed by Mary Duffy and Ellen Cullaghan against the admission to probate of said will, the said William M. Taylor, Esq., Register of Wills, proceeded to take testimony of the subscribing witnesses to said will; that before the subscribing witnesses were sworn, he, the said Charles W. Sparhawk, as proponent of the will, insisted that the said caveators should first prove their relationship to the testator; that the said caveators, in answer to the demand, testified from hearsay that Peter Cullen was born in County Wicklow, Ireland, and was brought to America, whilst a child, by a family by the name of Maitland; that though Peter Cullen was a very old man, and they came

7 OUTERBRIDGE.—7

from the same county, they had never seen the said Peter Cullen until within a few years last past, although all residents of Philadelphia for a long time past; that after the subscribing witnesses had been sworn, the said caveators produced as a witness one John J. Maitland, subpœnaed as a member of the said family of Maitlands, with whom the said Peter Cullen had come to America as a child; that the said John J. Maitland testified that it was the tradition of his family that the said Peter Cullen was brought to America by his grandmother; also that Peter Cullen was a relative of the Maitlands, and that all came from the neighborhood of Dublin, and not from the County Wicklow; that the said caveators produced another witness, John Tack, who testified that he knew the said Peter Cullen when a boy, and understood that Cullen was a relation of the Maitlands; that the said caveators produced another witness, William E. Lehman, who testified that he had heard it stated that Peter Cullen was born at sea; that neither the caveators nor any other witnesses stated, of their own knowledge, that they were related to the said Peter Cullen; that some witnesses produced by the caveators testified that Cullen had said that said caveators were his relations, whilst others testified that he had said that he had no living relations; that other witnesses were produced by the caveators, on the grounds of undue influence and insanity; that, after the caveators had concluded their testimony, the said Charles W. Sparhawk, in order to have the matter of relationship of the said caveators referred to the Orphans' Court, produced two witnesses, namely, William Kane and Samuel Burrows, who contradicted point-blank the testimony of the witnesses produced by the caveators that the said Peter Cullen had said that the caveators were relatives, and testified that they had heard him say that he had no living relatives; that a conflict of testimony having thus arisen amongst the witnesses produced by the said caveators, as well as between them and those produced by the said Charles W. Sparhawk in regard to the question whether the said caveators are of kin to decedent; that he, the said Charles W. Sparhawk, to the best of his knowledge and information, does not believe that the said caveators are of kin to the decedent, or in any way related to him; that such also is the uncertainty connected with their claims, that on the fifteenth day of September, 1881, information of an escheat was filed with the Auditor-General of Pennsylvania, and on the seventh day of December, 1881, a deputy escheator, appointed on behalf of the Commonwealth; that after the production of the witnesses aforesaid by the said Charles W. Sparhawk, on the tenth day of January, 1882, he made a formal request in writing, to the said Register of Wills, to refer the said difficult and disputable

[Taylor v. Commonwealth.]

matter (that is, the determination of the question whether or not the said caveators were of kin to said decedent) to the Orphans' Court, under the provisions of the twenty-fifth section of the Act of March 15th 1832; that afterwards, to wit, upon January 31st 1882, the said caveators filed a formal request in writing to the said Register of Wills, to grant an issue devisavit vel non, to determine the validity of said will; that upon January 27th 1882, Christopher O'Toole filed a petition with the said Register of Wills, claiming kinship with the said decedent, and also praying that an issue devisavit vel non be granted; that at the time when the said Charles W. Sparhawk made the request to the said Register of Wills, to wit, January 10th 1882, to refer the said difficult and disputable matter to the Orphans' Court, no request for an issue devisavit vel non had been made by either of the said caveators, or by the said Christopher O'Toole; that the said William M. Taylor, Register of Wills, upon February 10th 1882, refused to grant the request of the said Charles W. Sparhawk, to refer the said question of kindred to the Orphans' Court, but granted an issue devisavit vel non to the Court of Common Pleas, to determine the validity of said will, but not to determine the question of kindred, thereby preventing him, the said Charles W. Sparhawk, from having the said question of kindred determined by a court of law judges, as contemplated by the Act of March 15th 1832; that upon February 14th 1882, the said Charles W. Sparhawk made application to the Orphans' Court for a rule to show cause why the said William M. Taylor, Esq., Register of Wills, should not certify the said difficult and disputable matter to the said Orphans' Court; that on the fourth day of March 1882, the rule was discharged, and the said Charles W. Sparhawk is without legal remedy in the premises unless our said court shall intervene.

We, therefore, being willing that due and speedy justice should be done in this behalf, do command you, William Marshall Taylor, Register of Wills, that forthwith you shall certify the said difficult and disputable question of kindred whether the said caveators are of kin to the said Peter Cullen, deceased, to the Orphans' Court for the county of Philadelphia, the precept for said issue devisavit vel non not to be sent to the Court of Common Pleas until the determination of this proceeding.

Witness, etc.

The decree of the court was: "Petition granted, and peremptory mandamus awarded," (no opinion filed). The respondent took this writ of error, assigning for error: (1.) The awarding the peremptory mandamus: (2.) The direction therein contained restraining the respondent from issuing his precept

[Taylor *v.* Commonwealth.]

for an issue devisavit vel non in the Common Pleas, pending the disposition of the said disputed question of kinship.

*A. S. L. Shields* and *John Samuel,* for the plaintiff in error.—Registers' courts having been abolished by the Constitution and Acts of Assembly the power of the Court of Common Pleas to issue a mandamus to the Register was abolished also. The Orphans' Court now has exclusive jurisdiction. Const. Penna. Art. v. § 22; Act May 19th 1874, § 5, P. L. 207; Cullen's Estate, 11 W. N. C. 304. Nor has the Common Pleas jurisdiction to enjoin the Register from issuing his precept to the common pleas for an issue devisavit vel non. The register in such case acts judicially :—Act March 15th 1832, § 13, Purd. Dig. 406 ; Commonwealth *v.* Bunn, 21 P. F. S. 405 ; Wickersham's Appeal, 25 P. F. S. 334 ; Wikoff's Appeal, 3 Harris 289 ; Cozzen's Will, 11 P. F. S. 196 ; Runkle *v.* Commonwealth, 1 Out. 328. The question having been decided on its merits by the Orphans' Court, is. res adjudicata : Gordinier's Appeal, 8 Nor. 528 ; Frauenthal's Appeal, 4 Out. 290. After the register has directed a precept to issue to the Common Pleas he cannot be required to certify any matter to the Orphans' Court : Commonwealth *v.* Clark, 32 Leg. Int. 116, Act March 15 1832, § 13, Purd. Dig. 406, pl. 8 ; Commonwealth *v.* Bunn, 21 P. F. S. 410. It is only in cases of disputed right to administration that the Register is required to certify questions of kindred to the Orphans' Court : Act of 1832, § 25, supra. In cases of contested wills, the Register, having the right to issue a precept to the Common Pleas, is the sole judge of preliminary questions, such as that of the prima facie right of a caveator to contest.

*John H. Campbell* and *Robert N. Willson* (*John Sparhawk,* Jr., with them), for the defendants in error.—The Common Pleas had jurisdiction to issue the mandamus : Act June 14th 1836, § 18, P. L. 621 ; Wolf *v.* Commonwealth, 14 P. F. S. 252. Art. V. § 22, of the Constitution makes the Register subject to the directions of the Orphans' Court only as clerk of said court, and not as Register of Wills, in which capacity he has both judicial and ministerial duties to perform : Logan *v.* Watt, 5 S. & R. 213; Commonwealth *v.* Bunn, 21 P. F. S. 409; Holliday *v.* Ward, 7 Harris 485 ; Carpenter *v.* Cameron, 7 Watts 51. The Orphans' Court can reverse his judicial decision upon appeal, but it cannot control, in the first instance, his judicial discretion. We contend that the Orphans' Court had no jurisdiction of the rule on the Register to show cause why he should not certify the question of kindred to that court (see Cullen's Estate, 11 W. N. C. 304), but even if it had, its refusal to act is no bar to this proceeding. The power

to compel the Register to perform a ministerial duty necessarily carries with it the right to restrain him from doing any act, which would defeat the exercise of the power. As no appeal lies from the award by the Register of an issue devisavit vel non (McCarter's Appeal, 29 Leg. Int. 317; Robinson's Estate, 32 Id. 83), the mandate of the Common Pleas restraining him from so doing was necessarily incidental to that compelling him to certify the question of kindred.

Mr. Justice STERRETT delivered the opinion of the court, April 30th 1883.

Unless the caveators are of kin to Peter Cullen, deceased, they have no standing in court as parties to an issue devisavit vel non to test the validity of the instrument purporting to be his last will and testament. If they were mere volunteers, having no interest in the estate either as legatees or next of kin, they were intruders and had no right to object to the probate of the will. It was solely on the ground of kinship to the decedent that they claimed the right to intervene and demand an issue. That fact was seriously disputed and denied, and thus a preliminary question was presented which should have been settled before the precept to the court of common pleas was issued. When that question of fact was raised, it would have been the duty of the Register, under the law as it stood before the adoption of the present constitution, to have convened a Register's court for the purpose of determining, first, whether the caveators or either of them were of kin to the decedant, and if so, whether an issue should be directed. An adverse decision on the first question would have put them out of court and ended the controversy so far as they were concerned, for the very obvious reason that they could have no interest in the proposed issue.

Register's courts were abolished by the constitution of 1874, and their powers and jurisdiction transferred to the Orphans' Court. In every county in which a separate Orphans' Court is established the Register of wills is, ex officio, "clerk of such court and subject to its directions in all matters pertaining to his office," that is, to his office as clerk of the separate Orphans' Court. In his official capacity as Register of wills he has independent judicial acts to perform in which he is not subject to the direction of the Orphans' Court, except by virtue of its appellate jurisdiction. It may reverse his decisions on appeal, but cannot, in the first instance, control the exercise of his judicial discretion in matters strictly pertaining to his office as Register. It follows, therefore, that the relator was not concluded by his application to the Orphans' Court for an order on the Register to "certify the said disputable and diffi-

[Vanderslice *v.* City of Philadelphia.]

cult matter" to that court, nor by its refusal to make the order prayed for. When the Register refused to certify the preliminary question to the Orphans' Court, and insisted on issuing his precept to the Common Pleas, the relator had a right to apply to the latter court for a mandamus commanding him to forthwith " certify the said difficult and disputable question of kindred" to the Orphans' Court. That would have been the better course. It was neither necessary nor proper for him to first apply to the Orphans' Court ; and, having done so improvidently, he should not be prejudiced thereby. The case was clearly within the jurisdiction of the Common Pleas. The question involved was duly considered, and, in the exercise of its sound discretion, the court awarded the peremptory mandamus. In so doing there appears to have been no error that calls for our interference. Neither of the specifications of error is sustained.

Judgment affirmed.