## Galli's Estate.

*Appeals—Definitive decree—Decedents' estates—Certification by register to O. C.—Act of March 15, 1832, P. L. 135.*

1. Where the question as to whether certain testamentary papers should have been admitted to probate was certified by the register of wills to the Orphans' Court under the Act of March 15, 1832, P. L. 135, and the Orphans' Court entered a decree directing the register to admit them to probate as constituting the last will of decedent, such decree is definitive and an appeal lies therefrom to the Supreme Court. After such decree the duty of the register is ministerial and not discretionary.

*Wills—Defectively executed testamentary writings—Admission to probate.*

2. Defects in the execution or witnessing of a will such that some or all of the bequests therein contained are void, do not prevent the probate of the will but go to the question of distribution.

3. Where testatrix, a citizen of Italy left one properly executed will and certain other testamentary writings, not executed according to the laws of Italy, but which contained statements throwing light upon testatrix's testamentary intention all the papers are properly admitted to probate, their legal effect to be left for future consideration and determination.

Argued Jan. 21, 1915.  Appeal, No. 207, Jan. T., 1914, by Mary W. DeFresnoys, Mary R. Ware and Lewis S. Ware, from decree of O. C. Philadelphia Co., Oct. T., 1913, No. 21, dismissing exceptions to decree of Hearing Judge in Estate of Clara Roberts Galli, deceased.  Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ.  Affirmed.

Certification by the Register of Wills to the Orphans' Court sitting as a Register's Court of "disputable and difficult" questions under the Act of March 15, 1832, P. L. 135, Section 25.  Before LAMORELLE, J.

The facts appear in the opinion of the Supreme Court

and in the following opinion of ANDERSON, J., sustaining exceptions to the decree of the hearing judge.

The decedent, a native of Pennsylvania and a resident of Philadelphia, was married to Count Galli, an Italian citizen and at that time consul for the Italian Government in this city. By virtue of her marriage she became a citizen of the kingdom of Italy. For some years the Count and Countess Galli continued to live in Philadelphia, but subsequently removed to Paris, France, where they died.

On March 19, 1898, Countess Galli executed a will supposedly in accordance with the laws of France and Italy, but which subsequently was found not to be so, owing to the omission of certain of the requirements of those countries. After the making of this will, and prior to 1900, her husband and three of her brothers named therein, died. On May 22, 1900, she executed another will, a holographic will, in accordance with the laws of France and Italy, whereby she gave certain legacies, revoked legacies given by the will of March, 1898, and provided as follows:

"I leave to my niece, Mary R. Ware, my nephew Louis S. Ware, and my nephew Edward Browning, share and share alike as my other nephews and nieces. I wish my former will of the 19th of March, 1898, to be carried out except that I have erased."

On June 9, 1900, she made a third will which, like the first, was not in conformity with the requirements of the laws of either France or Italy, containing, as represented by exceptants, almost exactly the provisions of the holographic will of May 22, 1900, as modified by the erasures of provisions in the will of March 19, 1898.

The testatrix died September 11, 1911. The three wills having been offered before the register for probate, objection was made to the probate of the wills of March, 1898, and June, 1900; and the matter was referred by the register to this court sitting as a Register's Court. At the hearing in this court, it was agreed by all parties

in interest, first, that the decedent was an Italian citizen at the time of the execution of all the wills and up to the time of her death; and, second, that the laws of Italy govern the requirements of execution of her wills. And there was proof by experts that under the laws of Italy the wills of March, 1898, and June, 1900, were invalid, that the holographic will of May, 1900, was the only valid will; and that, as the holographic will referred to the will of March, 1898, the latter would be taken into consideration in construing the holographic will. The testimony also showed that the subsequent will of June, 1900, might be considered in ascertaining her testamentary disposition.

The hearing judge, however, held that the wills of March, 1898, and June, 1900, could not be probated as part of the holographic will of May, 1900, but might be taken into consideration by the auditing judge in construing that will, and directed the register to admit only the holographic will to probate. This finding is the subject of the exceptions.

After due consideration of the matter, we think the hearing judge was in error in refusing to direct the admission to probate of the wills of March 19, 1898, and June 9, 1900, as part of the testamentary disposition of the testatrix. While it is true, as shown by the testimony of the experts, that the wills of March, 1898, and June, 1900, are in themselves invalid as testamentary documents under the law of Italy, it is also true that several experts have testified that the reference in the holographic will to the other wills compels a consideration of them, that is to say, these wills must be read into and form part of the holographic will in a proper construction of the latter. And the hearing judge has found that this question may be brought to the attention of the auditing judge for his decision.

We are left, then, to consider how this is to be brought to the attention of the court in the construction of the holographic will. There seems to be no testimony as to

the practice in Italy on this subject, and the general rule of law is that "in all matters of procedure courts are governed by the law of the jurisdiction in which they sit, without any regard to the domicile of the parties, the origin of the right, or the country of the act"; 31 Cyc. 45, citing cases in Connecticut, Massachusetts, New York, Texas, Virginia, United States and England.

In Pennsylvania the rule is that invalid testamentary documents referred to in a valid testament will not only be taken into consideration in construing the valid will, but admitted to probate as part thereof. This question was raised and carefully considered in an elaborate opinion in Baker's Appeal, 107 Pa. 381, a case in which an unsigned writing, testamentary in character and referred to in the signed and valid will, was admitted to probate as part of the will; Mr. Justice CLARK, after an exhaustive resume of the various cases on the subject, saying, "We are of opinion, therefore, that by force of the reference in the body of the will of George Baker, and the clear identification of the matter referred to, the writing on the fourth page is ipso facto drawn into the body of the will, and constitutes the fourth item or clause thereof." And in Nelson's Estate, 147 Pa. 160, a will which was revoked by a subsequent will was admitted to probate because the later will referred to certain bequests in the former and re-enacted them. See also Thompson's Executor v. Lloyd, 49 Pa. 127.

We think, therefore, the proper procedure is to admit the wills of March, 1898, and June, 1900, also to probate. In fact, were we to refuse to admit them to probate, it might be a very serious question whether under our decisions they could be considered by the auditing judge in construing the holographic will. As said by Chief Justice TILGHMAN, in Toner v. Taggart, 5 Binn. 490, "every kind of will must be proved before the register."

It does not follow from the fact that these wills are admitted to probate that their provisions are to be carried out in toto, but their admission is necessary in order that

the holographic will may be construed by reference to them in so far as the law of Italy allows such reference. In this respect they are like charitable gifts which will be held to be void, unless the will in which they are contained is shown to be properly attested or made within the requisite time before the death, though the will itself is entitled to probate: Carson's Estate, 241 Pa. 117.

The hearing judge directed that the holographic will of May 22, 1900, be admitted to probate.

The court in banc, LAMORELLE and GEST, JJ., dissenting, sustained exceptions to the decree and directed that the register admit to probate the wills of May 19, 1898, and June 9, 1900, with the codicils thereto. Mary W. DeFresnoys, Mary R. Ware and Lewis S. Ware, legatees under the holographic will of May 22, 1900, appealed.

*Errors assigned* were in sustaining the exceptions.

*H. Gordon McCouch,* with him *Edward Hopkinson, Jr.,* for appellants.

*G. Heide Norris,* for Agnes Roberts Dixon, Martha Groome Thompson, John Hampton Barnes, guardian ad litem for John C. Groome, Jr., Edward Browning, Jr., H. Radcliffe Roberts, Jr., Paul Roberts, Edward Roberts and Clarence Lewis Roberts, minors, and Home for Aged and Infirm Colored Persons, and *Owen J. Roberts,* for the Philadelphia Safe Deposit and Insurance Company, appellees.

*Marcel Viti,* for Sofia Antonini Trovato, appellee.

*Henry Budd,* for Howard Hospital, appellee.

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

A motion has been made to quash on the ground that there is no definitive decree from which an appeal will lie: That an appeal only lies from a final and definitive decree

in cases of the character here presented is too well settled by precedent and authority to be open to doubt. The statutes so provide and the cases so decide. No further discussion of this proposition is required. On this branch of the present case the only question that can arise is whether the decree entered by the Orphans' Court is final and definitive within the meaning of the rule, and the answer must depend to a large extent not only upon the nature of the decree but on the subject matter to which it relates as well. The record does not show the precise "disputable and difficult" questions certified by the register to the Orphans' Court for decision. The omission makes our task more difficult because the character of the questions certified has an important bearing upon the nature of the decree to be entered. We assume, however, as all parties concerned seem to have assumed, that the register took no formal action of any kind except to certify all matters in controversy relating to the probate of the will to the Orphans' Court, where the proceedings were de novo. The Act of March 15, 1832, P. L. 135, not only authorized the certification but upon the facts disclosed by the present record made it the duty of the register to certify the "disputable and difficult" questions as requested by all parties in interest: Cozzen's Will, 61 Pa. 196; Com. v. Bunn, 71 Pa. 405. The probate depended upon the decision of the questions certified. Three instruments were offered for probate as the last will and testament of testatrix. Should all the writings be admitted to probate, or only part of them? Did they all constitute a completed testamentary disposition of the estate of testatrix? Even if some of the writings did not constitute a testamentary disposition of property because not properly executed, should they be admitted to probate as papers testamentary in character and so immediately connected with what may be considered the valid will as to indicate the intention of the testatrix? While the record does not show that these exact questions were certified for deci-

sion, the course adopted by all parties in the court below
clearly indicates that they were all considered and passed
upon. The gates were opened and the investigation
covered the entire field. The expert testimony took a
wide range and must have been deemed full and complete
by the interested parties. With the record thus made up
the court entered its decree directing the register to ad-
mit the three writings purporting to be wills to probate.
This is the decree from which the present appeal was
taken. If no appeal had been taken, the record would
have been remitted and the register required to probate
without further hearing. His act under the circum-
stances would have been a ministerial one. It could not
be that having certified the questions in controversy to
a court of competent jurisdiction for decision, the regis-
ter after decree entered could disregard what had been
decided and conduct an investigation on his own account.
All controverted questions were certified to the Orphans'
Court; all testimony was taken in that court; no ques-
tion of jurisdiction was raised; and all parties presented
proof looking to a decree upon the merits. Now that the
case has been heard and decree entered, why send it back
to the register to travel over the very same ground, have
a hearing on the same evidence, and when final action is
taken by that officer, then take an appeal to the Orphans'
Court and from there here. Such circumlocution is not
to be commended and should never be resorted to un-
less clearly required by the law. In our opinion it is not
required in the present case. In this case there was no
issue growing out of a caveat entered against the pro-
bate, no precept for an issue to the Common Pleas was
filed, and no objections were made to the granting of let-
ters of administration. In such cases the issue neces-
sarily involves action in the first instance by the register
and this is the underlying thought of the decisions relied
on to sustain the motion to quash. To this class of cases
belong: Wilson v. Gaston, 92 Pa. 207; Taylor v. Com-
monwealth, 103 Pa. 96; Hoopes's Est., 152 Pa. 105;

Com. v. Thomas, 163 Pa. 446; Crawford v. Schooley, 217 Pa. 429; Zeigler v. Storey, 220 Pa. 471. It is suggested that the Orphans' Court has no original jurisdiction and this must be conceded. The cases so hold, but it does not follow that the court below had no jurisdiction in the present case. The Act of 1832 gave it jurisdiction to hear and determine the "disputable and difficult" questions certified by the register and in entering a decree it simply performed a statutory duty. The present case is easily distinguished upon its facts from all the cases relied on to sustain the motion to quash. It is not our intention to modify or change the rule of those cases in the slightest degree. They are authoritative and must be accepted as conclusively establishing the doctrine upon which they are based. In the case at bar the situation is entirely different for in the very nature of things the register was not in position to dispose of the complicated questions involved in the probate. He took no initial step by way of hearing testimony but certified the whole record to the Orphans' Court at the beginning. The issue involved the question of citizenship, of what the laws of France and Italy require in the execution of a will, and many other incidental and important matters. The procedure adopted by and with the consent of all interested parties clearly indicates that the decision of the Orphans' Court was intended to be binding upon the register. His duty in following the direction of that decree was a ministerial act, and not the performance of a judicial function as it would have been had he heard the case in the first instance, in which event decision and formal action would have been required by the register in the exercise of the power vested in him. Without more our conclusion is that the decree in the present case is definitive under its peculiar facts and that the appeal was properly taken.

Upon the merits our discussion will be brief. The testatrix, an American lady, married an Italian count, and lived for many years in the City of Paris. Her

estate consisting of personal property was held in Pennsylvania. She made a number of wills, which it is apparent, were intended to cover different situations as they had arisen from time to time. For instance she changed her will in some respects after the death of her husband, in others after the death of intended beneficiaries, and in others for reasons perfectly natural under the circumstances. One will was holographic, the others were not, but the intention of the testatrix is clearly manifest in all of them. She intended one to supplement and explain the other, because she said so in language too plain to be misunderstood. She was not familiar with the requirements of the law relating to the execution of wills and this gives rise to the present controversy. Then, again, the question of citizenship is involved because as to the execution of a will the requirements of the law' in the different countries are not the same. Some of the wills would be valid in this country and not in France or Italy. All of the writings are testamentary in character and the later ones contain positive statements that certain provisions of the former ones are to be carried out according to the direction of testatrix. Her clearly expressed intention was to dispose of her estate by the three testamentary papers offered for probate. The court below decided that the holographic will was the only one executed in accordance with the laws of Italy, and therefore the only valid will of an Italian citizen, which testatrix was conceded to be, but that the other wills should be admitted to probate because they contain references to the subject matter and body of the holographic will in such manner as to bring them within the authority of Thompsons' Executor v. Lloyd, 49 Pa. 127; Bakers' App., 107 Pa. 381; Nelsons' Est., 147 Pa. 160. Under all the circumstances we have concluded that there was no error in admitting all of the wills to probate. What effect shall be given them to be left for future consideration and determination. Whether the holographic will republished provi-

sions referred to in former wills, and what effect the
other wills can be given in ascertaining the intention of
the testatrix, and all other questions relating to the dis-
position of the estate here involved, are left open first
for the consideration of the auditing judge and subse-
quently for the Orphans' Court, or for this court on ap-
peal if that be deemed advisable. We think this is the
most satisfactory disposition that can be made of the
case upon the record here presented. This will give
counsel and courts ample opportunity to consider every
phase of the questions raised in the light of the law and
facts after hearing and full argument. The probate
will not be regarded as determining what distribution
shall be made of the estate under the provisions of the
will. This is for the auditing judge in the first instance
before whom may be raised every question pressed upon
us in this appeal. In many respects the case at bar is
analogous to that of a bequest void for charitable uses
because the will was not executed at a time nor in a man-
ner prescribed by law. This does not prevent the pro-
bate of the will but goes to the question of distribution:
Carson's Est., 241 Pa. 117.

Decree affirmed. Costs to be paid out of the estate.