## Hogue's Estate.

Argued April 12, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*C. E. Brockway,* with him *Leo H. McKay,* of *Brockway, Whitla & McKay,* for appellants.

*Emrys G. Francis,* with him *Joseph W. Nelson,* and *Davis, Fruit & Anderson,* for appellees.

OPINION BY STADTFELD, J., May 10, 1939:

This is an appeal from a decree of the Orphans' Court of Mercer County, affirming an order of the Register of Wills, admitting to probate two certain paper writings (referred to as deeds), dated December 9, 1924, as instruments of testamentary effect and as part of the will of Samuel Hogue, deceased.

On December 9, 1924, the testator, Samuel Hogue, called upon W. W. Johnson, a justice of the peace, to have drawn two deeds to separate farms, and a will. Two deeds were prepared, one conveying testator's sixty acre tract of land to Wylie Hogue, a son, and another conveying a fifty-two acre tract of land to Azotus Hogue, another son. These two deeds were executed and acknowledged by the testator under date of December 9, 1924. Later in the afternoon of the same day, a will was drawn for the testator, who executed it under date of December 10, 1924.

The latter instrument declared itself to be the last will and testament of Samuel Hogue, and after directing the payment of all debts and funeral expenses provided as follows: "Second: I give and bequeath to my children herewith named, George, Wesley, John, Ellen, Lou Chilson, the sum of $1,200 each. By reason of having recently deeded Azotus and Wylie farms I do not mention them in above bequests. Third: I give and bequeath to my two daughters, Ellen and Lou, my piano and all my furniture to be disposed of by them as they may deem fit. Fourth: I hereby direct that all live stock, farming implements and all property not heretofore mentioned shall be sold and the proceeds divided, share and share alike, among all my children, including Azotus and Wylie, with the proviso that my daughter Ella shall receive $500 first out of the sale, the balance to be divided as above mentioned." Ellen Hogue and Azotus Hogue were named executors. Testator was survived by his seven children mentioned in the will.

The deeds to Wylie and to Azotus were not delivered during the life of testator, but were found in his safe deposit box in the bank after his death. Azotus, being executor of the will, obtained the deeds and gave one of them to his brother, Wylie, and retained one. Both were then recorded. Thereafter, the other children of the testator filed bills in equity for cancellation of the

deeds. The lower court entered a decree, stating, "That the title to the same is now vested in those persons entitled to receive the same under the laws of the Commonwealth of Pennsylvania, and the last will and testament of Samuel Hogue, deceased, in the same manner as though the deeds had never been made or placed on record." Upon appeal to this court (*Hogue et al. v. Hogue*, 114 Pa. Superior Ct. 432, 174 A. 598) the decree was modified by striking from it the words "made or", leaving the decree to read "as though the deeds had never been placed upon record"; and it was concluded that "The decree will thus be without prejudice to the defendant to urge his contention in the proper forum as to the effect of the deeds taken in connection with the will." Subsequently, the deeds in question were offered and admitted to probate in connection with the probated will of Samuel Hogue.

Appellants contend that testator did not intend to devise the farms to Azotus and Wylie Hogue so as to become vested in them after his death, and secondly, that the deeds referred to in the will were not instruments of testamentary effect.

It appears that the deeds and the will in question were executed virtually simultaneously under such circumstances as would indicate the completion of a single transaction to dispose of his entire estate upon his death. Contemporaneously with the preparation and execution of these instruments, testator, voicing his desire to avoid trouble in the family by holding on to the deeds, rather than to deliver them during his lifetime, declared by way of explanation, "Of course, a person doesn't like to give their shoes away until they're through wearing them." Such was the testimony of Mrs. W. W. Johnson, wife of the justice of the peace, who was present at the preparation of the instruments and at the execution of the deeds. That the testator did not intend his sons who were named as grantees to take a present interest in the farms, is

amply clear in the light of his motive to avoid family trouble, of his express declaration not to deliver the deeds, and of his declared intention to retain his property until he had no further use for it. Moreover, it is equally clear upon consideration of the circumstances surrounding testator's execution of the instrument and from the interpretation of the second provision of the will, that he intended to give testamentary effect to the instruments of deed.

In *Sterrett's Estate,* 322 Pa. 300, 185 A. 214, extrinsic evidence was received, quoting *Gilmore's Estate,* 154 Pa. 523, 26 A. 614, "as being explanatory and incidental (and) admitted not for the purpose of introducing new words or a new intention into the will but so as to give an intelligent construction to the words actually used, consistent with the real state of the testator's family and property; in short, so as to enable the court to stand in the testator's place and read it in the light of those surroundings under which it was written and executed." In both opinions, Jarman on Wills, volume 1, section 394, was quoted as follows: "To this end it is obviously essential that the judicial expositor should place himself as fully as possible in the situation of the person whose language he has to interpret, and guided by the light thus thrown on the *testamentary scheme* he may find himself justified in departing from a strict construction of the testator's language, without allowing conjectural interpretation to usurp the place of judicial interpretation." (Italics supplied).

The intention of the testator to give testamentary operation to the deeds may be established by the application of the principle of incorporation by reference, uniformly adopted in this Commonwealth, in the construction of his will. This principle is clearly stated by the Supreme Court of this Commonwealth in *Clark v. Dennison,* 283 Pa. 285, 289, 129 A. 94, as follows: "While there has been some conflict of authority in the various jurisdictions, the general rule established by

the English decisions and followed in the majority of American jurisdictions, including Pennsylvania, is that reference in a will to an extrinsic document or writing incorporates the latter as part of the will itself, provided it is clearly identified and in existence at the time the will was written." "Or made at the same time as the will, as part of the same transaction": 68 C. J. §268.

No question is raised in the instant case as to the existence of instruments of deed prior to, or simultaneously with the will proper; nor is there any question as to the unmistakable identity of the deeds referred to in the material provision of the will. The fulfillment of the requirements for incorporation of the separate instruments by reference, gives full force to their testamentary effect and entitles them to be probated as part of the will. It follows, therefore, that Azotus and Wylie Hogue, as beneficiaries under the will, are entitled, by devise, to the farms referred to in the second clause of their deceased father's will and described in the deeds executed simultaneously therewith.

The case of *Thompson's Executors v. Lloyd,* 49 Pa. 127, is strong authority for the result we have reached. James Thompson had executed a deed to his sister, conveying a farm upon which he resided and continued to reside up to the time of his decease. He left the deed in the custody of one William Feath, without it ever having been delivered, and without any instructions as to the delivery thereof. He subsequently executed his last will and testament which contained the following provision: "To Barbara Clough (his housekeeper) I give the use of two acres of ground in the east corner of the field, known as the John Ashcroft field, on the farm on which I now reside, during her natural life, and at her death the same to revert back to said farm, and become the property of my said sister, Barbara Lloyd, *together with other lands I have already conveyed by deed to her."* He also executed other deeds, in his life-

time, to his sister, and to others of the legatees mentioned in the will, which were left in the custody of Mr. Feath, and were never delivered, nor were any instructions given in regard to their delivery.

The opinion of the court by WOODWARD, C. J., stated, at pp. 128, 129: "The deed can have no operation as a conveyance of the title, because it was not delivered in the lifetime of the grantor; but it existed, and may be taken in connection with the will to explain the language quoted above. (In supplied italics). Wills often refer to deeds, bonds and other instruments of writing which exist independently of themselves; and to explain the intention of the testator recourse is always had to the instrument referred to. It becomes in some sense a part of the will, and is to be taken in connection with it to get at the testamentary purpose.

"So using the deed in this instance, to interpret the allusion in the will, there can be no doubt that the latter received the proper construction in the court below, and that Mrs. Lloyd holds, *under the will,* the title to the farm, subject to the life estate of Barbara Clough in the two acres." (Court's italics). This case has been cited with approval in *Clark v. Dennison,* supra, 290.

Appellants rely upon *Bright's Estate,* 212 Pa. 363, 61 A. 941, wherein the Supreme Court reversed the decision of the register of wills, admitting to probate, eighteen months after the will was proved, a writing signed eight months after the date of her will, as a codicil thereto. In that case the court held that the declaration in the writing was as to a past act and not of a present intention to make a disposition of the property to take effect after death. In the instant case, the instruments were executed virtually at the same time, and under circumstances and declarations indicating a present intention to make a disposition of the farms so as to take effect after testator's death.

In arriving at our conclusion, we are satisfied with the resulting disposition of testator's estate, as being

just, natural and reasonable, with the avoidance of an intestacy as regards the farms he owned, and with the consequent equality of benefit among testator's children. Any other conclusion would result in an unreasonable violation of testator's scheme of distribution. It would imply an intention on the part of the testator to give each of his children, with the exception of Azotus and Wylie, a bequest of $1200, and to permit each of them, in addition, to share with the latter the interest in the farms as to which intestacy would then be established. Such a result would, as the court below indicated, be plainly destructive of testator's single plan to dispose of his entire estate.

The order of the court below is affirmed. Each party to pay his own costs.