## Sciutti Estate.

Argued October 2, 1952. Before STERN, STEARNE, JONES, BELL and MUSMANNO, JJ.

reargument refused November 28, 1952.

*Fred C. Houston, Jr.,* with him *Houston & Houston,* for appellant.

*Joseph A. Cirillo,* with him *Lloyd E. Gluck* and *Ferraro and Gluck,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 10, 1952:

The Orphans' Court of Allegheny County dismissed an appeal from the decree of the Register of Wills refusing probate of a letter and an unexecuted will (sought to be incorporated in the letter by reference). The appeal is from the decree of the Orphans' Court.

Andrew J. M. Sciutti died May 14, 1949. He was survived by his widow and collateral relatives. His estate was inventoried at over $66,000. On October 13, 1943, he typed a will, whereunder five hundred dollars each was bequeathed to a church and to three religious organizations; one thousand dollars went to each of three nephews; his married sisters, brothers and another nephew were each given one dollar; the remainder of his estate decedent bequeathed and devised to his wife, with alternate dispostion in the event of her predecease (which did not occur); his wife was named executrix, and a trust company as executor if she were deceased. For reasons not disclosed in the record, decedent failed to sign this document, although it was witnessed by two individuals. On November 27, 1948 (over five years thereafter) decedent signed a letter, written by decedent's wife at his dictation, addressed to Norman B. Ward, his investment counsellor. The

letter refers to decedent's disappointment over the distribution of his mother's estate; that his "folks" desired his marital separation "so they can get control of what I may have". The pertinent portion of the letter reads: "In my last will and testament I have left my bonds and securities to my wife. I would like to arrange matters so nothing could ever interfere with my wishes in this respect. What procedure would you suggest to safeguard my wife's interests? Not having children I think it best to take every precaution as I do not want my will to be broken. I have reasons to know my folks would do this as they have let out from time to time that anyone with kidney trouble is not mentally responsible."

We can add little to the accurate and comprehensive opinion of Judge Cox.. He wrote: "The letter addressed to Norman B. Ward, written more than six years [sic] after the date on the will is not a testamentary instrument. For it to be so, is [sic] was essential that decedent should have expressed plainly and unambiguously an intent by means of it to make a testamentary disposition of property, real or personal, owned by him. This he did not do. The context of the letter clearly discloses that his testamentary intent was contained in a will referred to in the letter, and that the will itself was considered by him to be the testamentary instrument which disposed of his estate. We have no assurance even that the will offered for probate together with the letter is the will referred to in the letter, decedent having failed to identify his will, either by date or by an adequate description of its contents."

It is conceded that an unsigned document in the *form* of a will cannot be probated as a will. A will in order to be valid must be signed: Sec. 2 Wills Act of April 24, 1947, P. L. 89, 20. PS 180.2. But an ex-

trinsic writing, having no validity in itself as a will, nevertheless may be *incorporated by reference* as part of a valid will: *Baker's Appeal*, 107 Pa. 381; *Nelson's Estate*, 147 Pa. 160, 23 A. 373; *Galli's Estate*, 250 Pa. 120, 95 A. 422; *Grubb's Estate*, 263 Pa. 468, 106 A. 787; *Hogue's Estate*, 135 Pa. Superior Ct. 543, 6 A. 2d 108. The pivotal question, therefore, is whether the letter of November 27, 1948, is testamentary in character, and therefore constitutes a valid will.

Blackstone with simplicity and accuracy defines a will as "the legal declaration of a man's intentions, which he wills to be performed after his death": *Burtt Will*, 353 Pa. 217, 221, 44 A. 2d 670. There are no dispositive words in the letter sought to be probated. Decedent states "I do not want my will to be broken". He intimates that he does not desire to have his "folks" share in his estate. He states "I have reasons to know my folks would do this" (i.e. attempt successfully to contest his will). Viewing such language in the light most favorable to contestant, it is but a statement that he desires to exclude his "folks" from participating in the distribution of his estate. But even if the letter be so regarded, in the absence of dispositive provisions, mere *negative words* of exclusion do not constitute the writing thereby a will: *Will of Louisa Rorer*, 7 Phila. 524; *McGovran's Estate*, 190 Pa. 375, 378, 42 A. 705; *Everitt's Estate, (No.1)*, 195 Pa. 450, 453, 46 A. 1. But every possibility of doubt was removed when decedent stated in the letter *"In my last will and testament* I have left my bonds and securities to my wife" (italics supplied). As so clearly and accurately stated in Judge Cox's opinion, decedent declared that his disposition was contained in the will referred to in the letter. He provided for no disposition of his estate in the letter. There is no merit to the appeal.

Decree affirmed at cost of appellant.