DELAWARE TRUST COMPANY, a Delaware corporation, Trustee under Agreement dated December 27, 1963, with William duPont, Jr.,
Plaintiff,

*vs.*

DELAWARE TRUST COMPANY, JEAN ELLEN DUPONT MCCONNELL, and WILLIAM S. POTTER, Executors under the Will of William duPont, Jr., Deceased, *et al.,*
Defendants.

*New Castle, August 24, 1966.*

*E. Dickinson Griffenberg, Jr.,* of Killoran & Van Brunt, Wilmington, for plaintiff.

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, for executors of estate of William duPont, Jr.

*W. Laird Stabler, Jr.,* Wilmington, guardian *ad litem* for minor and unborn grandchildren of William duPont, Jr.

*William Prickett, Jr.,* and *Rodman Ward, Jr.,* of Prickett & Prickett, Wilmington, for other appearing defendants.

MARVEL, Vice Chancellor: On December 27, 1963, the late William duPont, Jr., having formalized and adopted a pension plan for the benefit of certain of his full time employees, entered into a trust agreement with the Delaware Trust Company under the terms of which Mr. duPont undertook, as of December 3, 1963, to establish a trust consisting of such moneys and other property as he might from time to time pay over to Delaware Trust Company as trustee. Thereafter, he transferred into trust the sum of $563,909.60, an amount estimated to be sufficient to support the payment of both retirement and disability pensions to those of his employees who might qualify therefor. The pension plan in question was drawn so as to have it qualify with those provisions of the Internal Revenue Code of 1954 which govern pension plans such as the one here in issue (pension plan par. 7.3). Such trust agreement further provided that such moneys and other property were to be thereafter held and invested by the trustee, and that pension payments were to be made out of said fund to designated employees of Mr. duPont when ordered by a pension committee provided for in the plan.

Following the creation of the pension plan, William duPont, Jr., who was then sixty-seven years of age, paid into the trust an amount, which, at the time of his death on December 31, 1965, had a market value of $615,826.00. And while paragraph 7.2 of the pension plan provided that it might be modified or terminated by Mr. duPont at any time so long as the amounts accrued to the benefit of any eligible employee as of the date of such modification or termination were not affected, and a method of allocating pension moneys then held in the fund among eligible employees in the event of such modification or termination was provided for, no express provision was made for the contingency which in fact came to pass, namely William duPont, Jr.'s death prior to a full funding of the fund. It is apparently an undisputed fact that had Mr. duPont lived out his full life expectancy following adoption of the plan, the pension fund would have become fully funded prior to his death. As matters now stand, there are not sufficient moneys in the fund to pay full pensions to all eligible pensioners, namely those who otherwise qualify and remained in Mr. duPont's employ until his death.

Plaintiff, trustee under the December 27, 1963 agreement, being of the opinion that it was Mr. duPont's intention that his executors should make up any deficiency which might exist in the trust fund at the time of his death, has brought this action for an order directing the executors of the duPont estate to pay over to the plaintiff trustee the amount required to make the pension fund fully operative. In the alternative, plaintiff seeks instructions as to how employee pensions should be calculated in the event that the executors are directed not to pay over the amount required for a full funding of the plan. Named as defendants are the executors of Mr. duPont's estate, his living and unborn grandchildren, and those employees eligible for benefits under the pension plan as of the time of Mr. duPont's death.

The answer of the executors of the duPont estate takes the position that nothing in the pension plan, in the trust agreement, nor in the will of William duPont, Jr., obligates or authorizes the executors of the duPont estate to augment the pension fund as prayed for by plaintiff, and asks that the executors be instructed as to their liability, if any, to the fund. In their brief, the executors argue that inasmuch as Mr. duPont was under no obligation to build up the fund to any set amount, they are similarly free of any obligation to augment the fund as prayed for by the pensioners. Those employees who are eligible for pensions under the plan ask that the executors be ordered to augment the fund to the extent required fully to fund it, while the guardian *ad litem* for Mr. duPont's living and unborn grandchildren contends that plaintiff's prayers for relief must be denied.

Motions for judgment on the pleadings having been filed, together with certain affidavits, the allegations of which are not denied, and there being no other material facts of record in dispute, the pending motions will be treated as motions for summary judgment, and an appropriate final order entered.

The pension plan here in issue generally provides for old age retirement pensions for those employees of Mr. duPont who have completed fifteen years of service and have attained the age of seventy-two years as well as disability payments for those employees who may become totally disabled as defined in the plan. The pen-

sion payable to an aged retired employee is fixed as an amount equal to his annual salary immediately prior to his seventy-second birthday minus his primary old age social security benefit, while the pension to be paid to a totally disabled employee is fixed as his salary immediately prior to his retirement date for such disability minus a portion of appropriate social security benefits where allowed. The plan also provides that the entire amount of the retirement fund is to be furnished by the employer, paragraph 5.2 of the plan stating: "The Employer shall make such contributions as to provide the Retirement Income of this Plan."

In various other respects Mr. duPont can be said to have indicated that he intended to be bound by the plan and that he would bear its entire cost. At the time of its adoption he wrote his employees that the "* * * plan has been established in recommendation of the long and faithful service of my employees * * *". He also enclosed in such letter an outline of the plan in which he not only assured his employees that in the event of his death they would be entitled "* * * to the pension being funded for you on the first day of the month following Mr. duPont's death * * *", but also made it clear that "* * * Mr. duPont pays the entire cost of the Plan * * *". The employees were also assured: "* * * Your pension will be equal to your base salary at the time of retirement reduced by your Social Security Benefit * * *". It is accordingly contended that Mr. duPont having contracted fully to fund the pension trust that such contractual obligation is binding on his estate. However, as noted above, nowhere in the papers before me can be found an express provision obligating the executors of Mr. duPont's estate to pay additional moneys into the trust fund in the event of his death prior to the time when the trust should become fully funded, although paragraph 6.2 of the pension plan provides that if the death of the employer shall be the cause of an employee's termination of service, eligible employees under such circumstances may expect to receive retirement income "* * * based on the assumption * * *" that such employees have attained their normal retirement date and are receiving old age social security. It is also strongly urged by those who seek an order directing the executors to supplement the pension fund here in issue that paragraph sixth of the duPont will makes an implied gift from the remainder of his estate of the amount necessary to fund the pension trust so as to make full pensions available to those eligible for

them, his concern therein expressed for his shorter term employees being indicative of the fact that he believed that his responsibility to his employees of fifteen years service had been adequately met. Such paragraph reads:

> "I have created a pension plan and trust to provide pensions for those of my employees who have been in my employ for fifteen (15) years or more. In order to discharge my pension obligations to those of my employees who have been in my employ for a period of five (5) years preceding my death but who have not been so employed for a period of fifteen (15) years, I direct my Executors to pay unto each such employee who is not covered by and does not benefit from any pension plan or trust established by me prior to my death, an amount equal to the monthly salary being paid to such employee at the time of my death multiplied by the number of years such person has been in my employ."

■ The primary rule of will construction is, of course, that effect must be given, whenever possible, to the expressed intent of a testator although such intent may be clarified from an examination of the surrounding circumstances, *Bird v. Wilmington Society of the Fine Arts,* 28 *Del.Ch.* 449, 43 *A.2d* 476. In the case at bar, it is urged by those who would have the executors ordered to supplement the funds held in trust on Mr. duPont's death that the language of his will discloses not only an awareness on Mr. duPont's part of the fact that he bore an obligation to his long-time employees insofar as pensions are concerned but, more importantly, that he believed he had properly met such obligation to his employees of fifteen years service inasmuch as the plan itself provided that upon the employer's death such an employee was to receive a pension computed on the basis that he had in fact attained his normal retirement date (see par. 6.2 of the pension plan). Finally, it is contended that the fact that Mr. duPont specially provided in his will for the pensioning of employees of less than fifteen years service can only be interpreted to mean that if he had been aware of the possibility that his employees of fifteen years service would not receive full pensions, he would have seen to it that any ambiguity as to his intent in such regard would have been cleared up by the insertion of an appropriate testamentary provision.

■ It would appear to be clearly established that where a testator makes reference in his will to facts and circumstances which he mistakenly assumes to have in fact taken place or where a transaction referred to in a will bears a legal significance at variance with what the testator had believed to be the case, a court, in order to give effect to the testator's intent, will consider done what was intended to be done through application of the principles of incorporation by reference and the avoiding of a tortured reading which frustrates a testator's intent. Thus in *Loring v. Sumner,* 23 *Pick.* (40 *Mass.*) 28, a father, prior to his death, had given his son a legally unenforceable note to be paid out of the testator's estate, a transaction referred to in the testator's will as a payment of the son's "full part of my estate". The court held that a valid legacy to the son had in fact been given in the amount of the note. The same principle has been applied to spell out a devise where a will referred to "other lands already conveyed", when, in fact, the deed of conveyance referred to in the will had not been delivered to the donee during the testator's lifetime, *Thompson's Executors v. Lloyd,* 49 *Pa.* 127. See also *Hogue's Will,* 135 *Pa.Super.* 543, 6 *A.2d* 108, and In re *Dimmitt's Estate,* 141 *Neb.* 413, 3 *N.W.2d* 752, 144 *A.L.R.* 704. In the case at bar, however, can it be said that an incorporation by reference of the provisions of the pension plan into the duPont will requires the executors of the duPont estate to complete the funding of the pension trust here in issue as contemplated by the testator?

Turning to the pension plan itself, it is clear that the employer intended that the adoption of the plan should not create contractual obligations (par. 9.1); that the trust fund should be the sole source of benefits under the plan, and that an employee might look only to the fund itself for benefits "* * * and shall not have any right, claim or demand therefor against the Employer * * *" (par. 9.5).

Furthermore, paragraph 2 of the trust agreement relieves the trustee from any duty to enforce payment of any contribution made to the trust fund and provides that the trustee "* * * shall not be responsible for the adequacy of the Trust Fund to meet and discharge pension and other liabilities under the Plan * * *". Finally, paragraph 5.3 of the plan states that no person shall have any interest in or right to any part of the trust fund "* * * except as expressly

provided for in the Plan or Trust Agreement * * *". And while the plan states that the employer expected the plan to be permanent, the right to change, modify or terminate the plan, except, of course, as to vested rights (par. 7.2) was retained by the employer (par. 7.1).

■ There would appear to be no doubt but that Mr. duPont intended that his employees who might retire after fifteen years service would receive full pensions either at their reaching the age of seventy-two during his lifetime, or at his death. However, because he evidently believed that he would live out the period required for his initial cash transfers into trust to grow into a sum sufficient to meet any legitimate pension demand, he did not expressly provide in his will for contributory action on the part of his executors. It should be noted, however, that on November 12, 1963, prior to setting up the pension fund, he wrote his attorney "* * * I think that some form of codicil to my will should be written up as a temporary measure. I find that Larry[1] will take several weeks before the actuarials will have the plan completed and be made part of my will so that (1) My executors would continue to follow out the plan or have a similar plan for those that have been working with me for many years * * *" (exhibit to Eckman affidavit). In other words, while Mr. duPont, at the time of its formal adoption, reserved the right to discontinue the plan, in November, 1963, he appears to have been impatient about delays in its inception and looking forward to its continuation after his death. And, in carrying out his plan for permanence, he had, prior to his death, placed in trust a sum designed fully to fund the trust during his expected life span. Finally, paragraph 6.2 of the pension plan provides for full pensions not only for his farm and domestic employees after fifteen years service but for his female secretarial employees after at least ten years service. This intention must be given force and effect unless so to do would constitute an unwarranted rewriting of the testator's will, *Page on Wills* (Bowe-Parker Revision) *Vol.* 4, § 30.7 p. 46.

■ I conclude on the basis of the facts before me that while Mr. duPont's intent was to provide full pensions to his long-time employees in the event of his death, the fact that he wrongly assumed that adequate provision had been made for the payment of such

---

1. Laurence F. Meehan, trust officer of Delaware Trust Company, trustee.

pensions on the basis of the actuarial estimate of the time required for such funding is not the type of mistake which can be remedied by judicial action. I therefore find that a mere false assumption as to length of life and not a true mistake as to an accomplished fact or a misunderstanding of a principle of law having been made in connection with the estimate of the time expected to elapse between the inception of the plan and its creator's death, that principles of incorporation by reference and of gifts by implication do not apply.

Accordingly, the trustee and the pensioners are not entitled to the relief sought by them on the basis of the authorities cited earlier in this brief which hold that a testator's mistake as to the precise nature of earlier acts and their legal effect should be ordered remedied by his executors in order to carry out a decedent's intent. See also *Milner v. Milner,* 1 *Ves.Sen.* 106, 27 *Eng.Rep.* 921, in which an increase was ordered to be made in a father's bequest to his daughter from 3500 pounds to 4500 pounds so as to create along with other property due the daughter a total estate of 10,000 pounds, the fortune which the father intended his daughter to have, the testator having in his will over-estimated the amount due his daughter under his own marriage settlement. In the case at bar, on the other hand, there was no real mistake as to a past event but a continuing miscalculation of the duration of Mr. duPont's life. To hold that the executors must here carry out Mr. duPont's intent under the principles of incorporation by reference and implication would, in my opinion, constitute a rewriting of his will.

The trustee and the pensioners point out, however, that Mr. duPont's intentions as to the granting of lifetime pensions to his eligible employees constituted an offer, and that while the testator reserved the right to terminate or modify the pension plan here in dispute, no changes were therein made during his lifetime. As a result, it is argued that the persons in his employ at his death acquired vested rights, and the fact that the employer took pains in the plan to disavow any contractual obligation towards his employees under the pension plan does not affect such rights. It is accordingly contended that by remaining in Mr. duPont's service until his death, his long-term pensioners fully performed their obligations in response to Mr. duPont's offer of a pension plan and that their vested right to

pensions must be honored. Compare *Cantor v. Berkshire Life Insurance Co.,* 171 *Ohio St.* 405, 171 *N.E.2d* 518, *Siegel v. First Pennsylvania Banking & Trust Co.* (*D.C.Pa.*) 201 *F.Supp.* 664, and dissenting opinion in *Neuffer v. Bakery and Confectionery Workers,* 113 *U.S.App. D.C.* 334, 307 *F.2d* 671. See also *Annotation* in 42 *A.L.R.2d* at p. 467, "*Pension Plan—Rights of Employee*". I agree with the views of the authorities cited. While voluntary pension plans were until relatively recently considered to be of a gratuitous nature, the modern trend is to view them as constituting offers of additional compensation and as incentives to continuing and more dedicated service. Here, the services contracted for have clearly been performed. Compare *Beard v. Elster,* 39 *Del.Ch.* 153, 160 *A.2d* 731. The defendant executors will be directed to furnish the trustees with the funds necessary to pay for the pensioners' vested contractual claims for lifetime pensions.

In view of the conclusions reached hereinabove concerning the contractual obligations of the executors towards the pension fund here in issue, it is unnecessary to consider the respective contentions of the parties as to the applicability of the doctrine of estoppel to the facts herein presented.

On notice, an appropriate order granting summary judgment to the trustee and the pensioners may be submitted.