## Covert Estate

*William Hill* and *Mervine & Calderwood*, for executor.

*James Blackman*, for legatees.

WOLFE, *P. J.*, June 26, 1975—Section 3, Rule 1, of Orphans' Court Rules of the Supreme Court of this Commonwealth compels orphans' court practice to conform to equity procedure in the local court of common pleas. In the absence of such rules in this district, we are compelled to follow the Rules of Civil Procedure in equity as promulgated by the Supreme Court in Pa. R.C.P. 1517.

This matter is before us on petition of Warren National Bank, executor under the last will and testament of Charlotte J. Covert, deceased, seeking a declaratory judgment under the Uniform Declaratory Judgment Act of May 22, 1935, P.L. 228, 12 P.S. §831.

The petition has been entered into by Alma Lang and Paul Lang and is in the nature of a stipulation, with petitioner alleging the will should be executed by incorporating two memoranda found after testatrix' demise.

## ISSUE

Are two written memoranda incorporated in decedent's last will and testament by reference?

## STATEMENT OF FACTS

1. Decedent died testate on April 16, 1974, leaving a last will and testament dated April 17, 1972.

2. During the course of the administration, a typed memorandum was found with the will (exhibit B) and a second handwritten memorandum was found in decedent's safe deposit box.

3. Neither memorandum was executed or dated except exhibit B carries the name of "Charlotte J. Covert."

4. Exhibit C is in the handwriting of decedent.

5. The scrivener of the last will and testament, an attorney-at-law, drafted 12 prior wills for decedent at different times, commencing in 1966, together with three codicils.

6. The information to draft the last will and testament was gathered by the scrivener while at testatrix' home; thereafter testatrix came to his office and executed the will.

7. On April 17, 1972, testatrix executed her last will and testament.

8. On April 17, 1972 testatrix signed her name in a space provided for in exhibit B.

9. The scrivener placed the last will and testament of April 17, 1972, and the memorandum in an envelope and kept the envelope in his office until the time of her death.

10. There is no direct evidence exhibit B was executed in point of time subsequent to the last will and testament on April 17, 1972.

11. The scrivener had no knowledge of the existence of exhibit C and was not aware of it until testatrix' safe deposit box was opened subsequent to her death.

12. Exhibit B provides:

### "MEMORANDUM

"I, Charlotte J. Covert direct my Executor to give my dining room table to Paul S. Lang, and my painted china dishes to Paul W. Lang."

13. Exhibit C provides, inter alia, as pertinent to the issue:

"In accordance to Paragraph 2 of my will I wish my Executors to distribute the items listed below.

"My Last Will and Testament to be added to my will in the *safety box at Warren National Bank.* Box Number 728.

". . . Alma and Paul Lang, 202 McKinley Avenue, Jamestown, New York pictures that Alma's dad (Carl Caesar) painted.

"Warren National Bank stock 528 shares.

"Gold and white handpainted dishes.

"Sterling table-ware & candle-sticks.

"4 Dining-room chairs done in needle-point.

"RCA colored TV bought 1962 $685.00.

"My Buick bought April 1, 1960.

"My gray afghan embroidered in flowers, all handmade (by me)."          (Emphasis added.)

14. Paragraph 2 of testatrix' last will and testament, as well as the 12 preceding wills, all provided identical language that:

"I direct my Executor to distribute certain items of personal property in accordance with any unsigned memorandum which it may find at the time of my decease."

15. There are ten inconsistencies either in the person to whom items mentioned in exhibit C are devised or the absence of the items mentioned in exhibit C in comparison to the last will and testament.

16. Testatrix last entered into her safety deposit box on March 14, 1969.

17. All of the prior executed wills of decedent were destroyed.

18. Testatrix had knowledge of the existence of paragraph 2 in her last will and testament and its legal efficacy if activated.

19. Testatrix was aware of the extent of her property and the objects of her bounty.

20. All wills prior to the last will and testament were kept either by testatrix at her home or at her attorney's office.

21. Mrs. Alma Lang is a niece of decedent and her nearest heir at law.

22. Paul Lang and Alma Lang were named as legatees in all former wills of testatrix.

23. The First Methodist Church was named as legatee in all prior wills of testatrix.

## DISCUSSION AND CONCLUSIONS OF LAW

Liberty Mutual Insurance Company v. S.G.S. Company, 456 Pa. 94, 318 A. 2d 906 (1974), now resolves the questions raised as to the availability of declaratory judgment proceedings if there is either a dispute of fact, removing discretion in permitting a declaratory judgment action, or if there is another remedy available.[1]

The parties have stipulated to have their differences resolved by a declaratory judgment proceeding. That judgment would declare whether the will should be executed according to its terms alone, or that only exhibit B be incorporated by reference or whether, as exceptants Alma and Paul Lang propose, the last will and testament be administered by incorporating exhibit C.

The doctrine of incorporation by reference is settled in Pennsylvania: Miller Estate, 380 Pa. 172, 110 A. 2d 200 (1955); Hogue's Estate, 135 Pa. Superior Ct. 543, 6 A. 2d 108 (1939); Wilson Estate, 363 Pa. 546, 70 A. 2d 354 (1950); Dreisbach Estate, 384 Pa. 535, 121 A. 2d 74 (1956); Clark v. Dennison, 283 Pa. 285, 129 Atl. 94 (1925).

In order to have the perfection of the doctrine the cases require that the extrinsic document (1) must

---

1. A Look at Declaratory Judgments in Pennsylvania Today, by Warner Amram, 41 Pa. Bar Assn. Quarterly 384 (June, 1970).

be clearly identified and (2) in existence at the time the will is written: Clark v. Dennison, supra. Another well-settled principle of construction and interpretation of wills is that every part of the will and the intent of the testatrix must be given effect, if possible.

The essential requirements for the application of the doctrine are:

"(a) The will must refer to the writing as being in existence,

"(b) The writing must actually be in existence at the time the will is executed,

"(c) The reference must clearly identify the writing and

"(d) The reference must show Testator's intention to incorporate it in the will." Samuel S. McKenney, "Wills-Incorporation by Reference," 17 Univ. Pitts. Law Rev. 519.

Indeed, an unsigned document in the form of a will, although not probatable as a will, can be incorporated by reference as part of a valid will: Sciutti Estate, 371 Pa. 536, 92 A. 2d 188 (1952).

The history of testatrix' re-drafting her will leaves no doubt she clearly understood the wording and the effect of paragraph 2. Exhibit C makes a clear reference to paragraph 2 (paragraph II) and exhibit B makes a clear reference to the designation in paragraph II of a "Memorandum."

We can conclude that exhibit C was in existence when the will of April 17, 1972, was executed, because it was found in the safe deposit box last entered into by testatrix in 1969 and admittedly in her handwriting. Equally, we have no difficulty in concluding exhibit B was executed simultaneously with the last will and testament according to the testimony of the scrivener, and a fair interpretation

of this testimony is that it was executed subsequent to the will, as the record reveals. After testatrix had read her will on April 17, 1972, she decided to make the changes as set down in exhibit B, which she then signed; it was placed in the envelope with her will.

The critical issue concerning exhibit C, and we think at this point the only issue, is whether testatrix intended exhibit C to be part of her last will and testament?

Exhibit C is in conflict with the will. The television and Buick vehicle were non-existent at the time testatrix executed her will of 1972. Concerning the Warren National Bank stock, the evidence establishes testatrix owned 528 shares from November 15, 1962 to March 1, 1966 and no other time either prior or subsequent to those dates did she own that number of shares.[2]

Notwithstanding these conflicts, the memorandum states it is to be added to her "Last Will and Testament in the safety box at Warren National Bank." In fact, at the time of testatrix' demise, the will was held by the scrivener in his office with only exhibit B accompanying it.

In our opinion it becomes evident, in view of the numerous prior wills, that although testatrix invoked paragraph 2 in one of those prior wills by the creation of exhibit C, her intention did not continue. We cannot extrapolate exhibit C into the will of 1972, as there is no vehicle of intent. Further, the will of 1972 was a complete re-draft and not simply a codicil and, this being the case, we are of the opinion it would be illogical to assume testatrix

---

2. Testatrix died possessed of 1,276 shares of Warren National Bank stock.

executed exhibit B simultaneously with her will if she was aware of the prior existence of exhibit C. Finally, the constant alteration of her will and disposition of property would strongly indicate testatrix came to no settled intention for any length of time after the execution of a will. Indeed, although the evidence shows testatrix to be competent, the same evidence demonstrates that the objects of her bounty were ever shifting.

For the foregoing reasons we enter the following

## CONCLUSIONS OF LAW

1. Testatrix died leaving a valid last will and testament executed April 17, 1972.

2. Said last will and testament incorporates "Exhibit B" by reference and is made a part thereof.

3. "Exhibit C" is not incorporated by reference in the last will and testament.

Based upon the foregoing findings of fact and conclusions of law we enter the following

## DECREE NISI

And now, June 26, 1975, the executor, Warren National Bank, is directed and authorized to administer the estate of Charlotte J. Covert in accordance with her last will and testament of April 17, 1972 and by incorporating therein exhibit B only.

Exceptions are granted to both parties to be taken within 20 days from the date hereof and in the absence thereof the clerk is directed to enter the within decree nisi as absolute.