## Feulner Estate

*Morris Passon,* for appellant.

*David M. Jones, Clark, Ladner, Fortenbaugh and Young,* for appellees.

KLEIN, Adm. J., October 31, 1969.—John M. Feulner died August 31, 1968, a resident of Philadelphia. On September 25, 1968, three writings were admitted to probate by the register of wills and letters testamentary were issued to Alvin Feulner, the executor designated in the first writing, which is dated November 11, 1953. The second writing is holographic and is dated June 24, 1957, and the third is also holographic and dated April 28, 1962.

On April 8, 1969, which was about six months after the grant of letters, Willie Feulner, decedent's brother, appealed from the decision of the register of wills admitting the 1953 document to probate and granting letters thereon. He concedes that testator possessed

testamentary capacity when the three writings were executed and that they were made free from undue influence, duress or constraint. His contention is that only the 1962 writing should be considered as decedent's last will and that the other two writings should be regarded as revoked, because the plan of distribution set forth in the earlier writings was changed in the last one.

We think this contention is without merit.

Let us examine more closely the three writings which have been probated in the present case. The 1953 will is a formally drawn typewritten paper duly attested by two subscribing witnesses. It has a clause revoking all former wills, provides for three pecuniary legacies, totalling $2,200, including a gift of $1,000 to Willie Feulner, appellant, and gives the residue of the estate to three charities: The Pennsylvania Association for the Blind, Damon Runyon Cancer Fund and the National Foundation for Infantile Paralysis. Alvin Feulner was named executor.

The 1957 holographic writing is headed "Codicil" and reads as follows:

"I, John Feulner, being of sound mind bequeath *everything thats in my house* to my brother Willy Feulner who now resides at 1804 Beverly Rd. Phila. Pa. 38. My car, if any, will go to my nephew Willy Feulner Junior, who also resides at 1804 Beverly Rd. Phila. 38, Pa." (Italics supplied.)

The 1962 writing is also holographic but is not specifically designated as a codicil. It reads:

"I, John M. Feulner, being of sound mind, bequeath *everything that's in my apartment, and garage, including cash,* and Checks, to my brother Willy Feulner 1804 Beverly Rd. Phila." (Italics supplied.)

The manner in which a will can be revoked is clearly set forth in section 5 of the Wills Act of April 24, 1947, which provides:

"Revocation of a will—No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

"(1) Will or codicil. By some other will or codicil in writing,

"(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, or

"(3) Act to the document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses."

It is well settled that the revocation by another writing need not be by a specific statement to that effect. In Gray Will, 365 Pa. 411 (1950), the court said, p. 416:

". . . the declaration of revocation need not be express, it may, under the authorities, be by necessary implication. An earlier will can be revoked by a later will or other writing which expressly revokes it or which disposes of an estate in an entirely different manner than the earlier will and is inconsistent therewith. There is no difference in principle between a revocation by an express clause or by inconsistent provisions: Burtt Will, 353 Pa. 217, 44 A. 2d 670; McClure's Estate, 309 Pa. 370, 165 A. 24; Teacle's Estate, 153 Pa. 219, 25 A. 1135; Hartman's Estate, No. 1, 320 Pa. 321, 182 A. 234; 1 Jarman on Wills, page 333."

If the last writing disposes of the entire estate in a manner different from the earlier writings and is wholly inconsistent with them, it must be regarded as

a will and the earlier writings are revoked. Otherwise, it must be regarded as a codicil to the first will.

A will and a codicil must be construed together. A codicil will be interpreted to disturb the dispositions of the original will only where its provisions are plainly inconsistent with the will. A codicil is not to be construed so as to disturb or change the provisions of a will further than is necessary to give effect to the provisions of the codicil: Braun Estate, 358 Pa. 271 (1948); Boyer Estate, 372 Pa. 553 (1953); Crooks Estate, 388 Pa. 125 (1957). A partially inconsistent writing which does not dispose of the entire estate and which contains no clause of revocation of the original will is but a partial revocation. The original will remains valid to the extent that it is not inconsistent with the later writing, and both are to be probated. See 5 Hunter Penna. Orphan's Court p. 259, and the cases there cited.

We do not regard the fact that the second writing is designated "Codicil" and the third one is not as material under the circumstances of this case. In our opinion, when the three writings are read together it seems clear that the 1957 writing as well as the 1962 writing are both codicils to the first will.

Crooks Estate, 388 Pa. 125 (1957), upon which contestant places great reliance, does not support his contention. In that case, testatrix left two short testamentary writings. The first was as follows:
"March 17th, 1955

"I leave *everything* I own to my husband Joseph H. Crooks

"/s/ Cornelia R. Crooks"
The second writing was undated but counsel stipulated that it had been executed by testatrix after her will of March 17, 1955. This testamentary writing read:

"To Whom it Might Concern
Elizabeth K. Schurig:

"I leave everything I have in the world to you to see that the baby—Patricia Joanne Crooks is properly cared for—Mr. Straub will see that matters are taken care of.

"This is the only will in existance (sic) and I want this carried out.

"I leave everything up to the discrestion (sic) of Mrs. Schurig

"/s/Cornelia R. Crooks"

It is obvious that the provisions of these two writings could not be harmonized, as the later one disposed of the entire estate and was wholly inconsistent with the earlier one. The Supreme Court ruled that the second will operated as a revocation of all wills previously executed by the testatrix although she did not use any express words to that effect.

This is clearly not the situation in the present case. Neither of the two holographic instruments contains a specific revocation clause and neither appoints an executor. Subsequent to the hearing held in this matter, an account was filed by the executor which discloses that testator's estate is composed not only of real estate but also of shares of common stock, shares in a mutual fund, a certificate of deposit, a savings fund account, travelers' checks found on his person, a refund from a steamship company and a payment due from the Social Security Administration. It is evident that the language used by testator in the third writing "everything that's in my apartment and garage, including cash and checks" cannot possibly dispose of all of those items.

The extent and nature of decedent's estate can only be determined with certainty at the audit of the account of his personal representative, at which time

the meaning of the language he used must be construed and all questions pertaining to distribution determined.

Accordingly, we enter the following:

DECREE

And now, October 31, 1969, the appeal of Willy Feulner is dismissed and the record is remitted to the register of wills.